IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| FELICIA FENECE FATUR, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Civil Action No. 21-336 |
| | ) |
| KILOLO KIJAKAZI,[1] | ) |
| | ) |
| Defendant. | ) |

ORDER

AND NOW, this 11th day of July 2022, upon consideration of Defendant's Motion for Summary Judgment (Doc. No. 17) filed in the above-captioned matter on October 18, 2021,

IT IS HEREBY ORDERED that the Motion is DENIED.

AND, further, upon consideration of Plaintiff's Motion for Summary Judgment (Doc. No. 14) filed in the above-captioned matter on September 16, 2021,

IT IS HEREBY ORDERED that Plaintiff's Motion is GRANTED insofar as she seeks remand to the Commissioner of Social Security ("Commissioner") for further administrative proceedings. Accordingly, this matter is hereby remanded to the Commissioner pursuant to sentence four of 42 U.S.C. § 405(g).

I. **Background**

Plaintiff applied for disability insurance benefits ("DIB") and supplemental security income ("SSI") on August 9, 2016. (R. 247). She later pursued her application before an Administrative Law Judge ("ALJ"). (*Id.*). The ALJ found Plaintiff was not disabled, a decision that Plaintiff challenged before the Appeals Council. (R. 10). The Appeals Council remanded

---

[1] Defendant's surname is misspelled on the docket as "KIJAZI." The Clerk is directed to amend the docket to reflect this change.

the matter to the ALJ and, pursuant to the remand, Plaintiff appeared before the ALJ for another hearing in pursuit of benefits under the Social Security Act ("Act"). (*Id.*). The ALJ considered Plaintiff's alleged disability anew, but again decided that she was not disabled under the Act. His decision became the final agency decision when the Appeals Council denied Plaintiff's request for review (R. 1). 20 C.F.R. §§ 404.981, 416.1481. Plaintiff now challenges the ALJ's decision before the Court and the parties' cross motions for summary judgment are pending.

**II.     Standard of Review**

The Court reviews an ALJ's decision to determine whether it is supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *i.e.*, "substantial evidence." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "[T]he threshold for such evidentiary sufficiency is not high." *Id.* It is deferential, such that reviewing courts "are not permitted to re-weigh the evidence or impose their own factual determinations" in place of the ALJ's findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014) ("[W]e are mindful that we must not substitute our own judgment for that of the fact finder.").

"The presence of evidence in the record that supports a contrary conclusion does not undermine the [ALJ's] decision so long as the record provides substantial support for that decision." *Malloy v. Comm'r of Soc. Sec.*, 306 Fed. Appx. 761, 764 (3d Cir. 2009). *See Brown v. Astrue*, 649 F.3d 193, 196 (3d Cir. 2011) ("Although there was record evidence from a treating psychiatrist suggesting a contrary conclusion, the ALJ is entitled to weigh all evidence in making its finding."). The Court will not, however, find an ALJ's decision is supported by substantial evidence if the ALJ has failed to address all the evidence, particularly evidence he or she appears

to have rejected. *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981) (citing *Dobrowolsky v. Califano*, 606 F.2d 403, 407 (3d Cir. 1979)).

Whether a claimant applies for DIB or SSI benefits, the claimant's alleged disability is assessed pursuant to a five-step regulatory evaluation. *Guerrero v. Comm'r of Soc. Sec.*, 249 Fed. Appx. 289, 291 (3d Cir. 2007) (citing 20 C.F.R. §§ 404.1520, 416.920); *Biller v. Acting Comm'r of Soc. Sec.*, 962 F. Supp. 2d 761, 776 (W.D. Pa. 2013). Pursuant to the five-steps:

> The Commissioner must determine: (1) whether the claimant is currently engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or a combination of impairments that is severe; (3) whether the medical evidence of the claimant's impairment or combination of impairments meets or equals the criteria listed in 20 C.F.R. Pt. 404, Subpt. P, App'x. 1; (4) whether the claimant's impairments prevent [him or] her from performing past relevant work; and (5) if the claimant is incapable of performing [his or] her past relevant work, whether [he or] she can perform any other work which exists in the national economy.

*Biller*, 962 F. Supp. 2d at 776 (citing 20 C.F.R. § 404.1520(a)(4)). Challenges to an ALJ's decision are often directed at the ALJ's preliminary step-four determination of the claimant's functional limitations and remaining work ability, *i.e.*, residual functional capacity ("RFC"). A claimant's RFC represents his or her "*maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis." SSR 96-8P, 1996 WL 374184, at *2 (S.S.A. July 2, 1996). With it, the ALJ decides whether the claimant can return to past work at the fourth step of the inquiry. 20 C.F.R. § 404.1520(a)(4)(iv). At step five, the ALJ asks whether the claimant's RFC, age, education, and work experience permit adjustment to other work notwithstanding the claimant's inability to return to past work. *Id.* § 404.1520(a)(4)(v).

**III.   The ALJ's Decision**

In this matter, the ALJ found that Plaintiff had not done any substantial gainful activity since her alleged onset date—January 1, 2015. (R. 13). Next, the ALJ found Plaintiff had six

severe, medically determinable impairments: fibromyalgia, arthritis, degenerative disc disease, attention deficit hyperactivity disorder (ADHD), anxiety, and obesity. (*Id.*). At step three of the five-step evaluation, the ALJ considered whether Plaintiff satisfied the criteria for certain presumptively disabling impairments. (R. 13—17). Specifically, he considered whether Plaintiff's impairments or combination of impairments met the criteria for Listing 1.02 (major joint dysfunction), Listing 1.04 (spine disorders), Listing 14.09 (inflammatory arthritis), and Listing 12.11 (neurodevelopmental disorders). Finding Plaintiff's impairments did not meet or equal the criteria for any of the Listings, the ALJ set out to determine whether Plaintiff could return to her past work as a nail technician or adjust to other available work. (R. 17—26).

Accordingly, the ALJ first formulated Plaintiff's RFC—a modified range of sedentary work. (R. 17). He found Plaintiff to be capable of sedentary work that did not demand she "work[] overhead with the right, upper and dominant extremity." (*Id.*). He further limited her exposure to certain workplace hazards; "to no more than frequent handling, fingering[,] and feeling;" and to work demanding "only routine, repetitive tasks" and "occasional judgment, decision-making, and workplace changes." (*Id.*). He also limited Plaintiff's interaction with the public, coworkers, and supervisors, and explained that she could "maintain concentration, persistence, and pace for extended periods on simple job tasks but not complex job tasks." (*Id.*). To arrive at this RFC, the ALJ considered Plaintiff's allegations of pain and other symptoms (R. 17—18), her treatment records from the relevant period (R. 18—22), medical opinion evidence (R. 23—25), and evidence of Plaintiff's activities of daily living. (R. 23). Considering Plaintiff's RFC, the ALJ determined that she could not return to her semi-skilled sedentary work as a nail technician. (R. 25). But—relying on vocational expert ("VE") testimony—the ALJ further found that Plaintiff's RFC, age, education, and work experience would permit adjustment

to other occupations such as addresser, toy stuffer, and document specialist.[2]  (R. 26).  Having found that Plaintiff could adjust to alternative occupations that offered an adequate number of jobs in the national economy, the ALJ decided Plaintiff was not disabled under the Act.  (*Id.*).

IV.     **Legal Analysis**

Plaintiff suggests there are at least five critical errors in the ALJ's decision.  Of them, the Court finds two that are compelling: first, that the ALJ neglected to address Plaintiff's alleged vertigo which found support in the objective medical evidence of the record; and second, that the ALJ rejected evidence suggesting Plaintiff's ability to reach and perform certain postural maneuvers was limited without explaining why he rejected that evidence.  Because these two oversights prevent the Court from finding that the ALJ's decision is supported by substantial evidence, the Court will remand the matter for further administrative proceedings.

The Court first addresses Plaintiff's argument that the ALJ failed to address her vertigo.  ALJs must not reject probative evidence without explanation.  *Cotter*, 642 F.2d at 706–07 (explaining that there must be an "explanation" for "why probative evidence has been rejected . . . so that a reviewing court can determine whether the reasons for rejection were improper").  That does not mean that ALJs must address "every relevant treatment note" in a claimant's record.  *Fargnoli v. Massanari*, 247 F.3d 34, 42 (3d Cir. 2001).  And claimant-challengers who contest an ALJ's decision must explain how the oversight they allege "could have made any difference."  *Holloman v. Comm'r Soc. Sec.*, 639 Fed. Appx. 810, 814 (3d Cir. 2016) (citing

---

[2]   In the decision, the skill level for this occupation appears to be misstated and the number of jobs associated with it is omitted.  (R. 26).  However, the Court has no reason to believe that the error had any effect on the outcome of the case.  Document Specialist (*i.e.*, "Document Preparer") is an unskilled position with an SVP of 2, DOT 249.587-018, available at https://occupationalinfo.org/24/249587018.html, and the VE in this matter testified that there are 20,000 such jobs in the national economy.  (R. 211).  Moreover, the ALJ explained that there were 5,000 total addresser and toy stuffer jobs available in the national economy.  (R. 26).

*Shinseki v. Sanders*, 556 U.S. 396, 413 (2009)). An oversight that made no difference—that is, a harmless error—will not necessitate remand. *Id.* In assessing the harmfulness or harmlessness of an error, the courts must ensure, however, that they are not supplying their own grounds for affirmance instead of basing affirmance on the grounds "upon which the record discloses that its action was based." *Fargnoli*, 247 F.3d 34, 44 n.7 (citing *SEC v. Chenery Corporation*, 318 U.S. 80, 87 (1943)).

In the decision in this matter, the ALJ made no mention of the evidence pertaining to Plaintiff's alleged vertigo and the Court would not be able to find that oversight harmless unless it undertook its own review of the vertigo evidence to decide whether it would have affected the RFC had it been considered in the first instance. At Plaintiff's hearing, her vertigo allegation was discussed in some detail. Plaintiff testified that she suffered from "positional vertigo and vestibular neuritis," *i.e.*, "chronic vertigo." (R. 195). She testified that her vertigo had been treated and gone into periods of remission but had never completely "gone away." (*Id.*). For symptoms, Plaintiff testified that vertigo resulted in her being unable to see (R. 195—96) and in frequent falls. (R. 198—99). Plaintiff's treatment record supported—at least to some extent—her allegations in this regard: 2019 notes from her visit to see Dr. Joseph Furman indicated that Plaintiff complained of "attacks of dizziness lasting seconds that can occur several times a day." (R. 1185). Vestibular testing was "consistent with a left reduced vestibular response." (R. 1187). Dr. Furman's impression was that Plaintiff was "suffering from bilateral peripheral vestibular disease with right-sided benign positional vertigo and a left reduced vestibular response." (R. 1195).

Despite this evidence, the ALJ did not include vertigo among the severe, medically determinable impairments he found at step two of the five-step evaluation. (R. 13). Often it is

the case that such an error—failing to discuss an impairment at step two—is rendered harmless so long as the ALJ finds at least one other severe, medically determinable impairment to propel the evaluation forward to step three. *See e.g.*, *Salles v. Comm'r of Soc. Sec.*, 229 Fed. Appx. 140, 145 n.2 (3d Cir. 2007). However, a harmless omission of a medically determinable impairment at step two ceases to be harmless if the ALJ overlooks the impairment *again* at step four in his or her formulation of the RFC which, of course, must reflect limitations arising from all impairments whether they are severe or non-severe. *Kenney v. Saul*, No. CV 20-1183, 2021 WL 4480164, at *1 n.2 (W.D. Pa. Sept. 30, 2021). The ALJ in this matter erred thus—in addition to overlooking evidence of vertigo at step two, the ALJ ignored that evidence in his formulation of the RFC. Accordingly, the Court heeds the warning of the United States Court of Appeals for the Third Circuit that a reviewing court that finds a decision is supported by substantial evidence despite the ALJ's failure to "analyze[] all evidence" and "explain[] the weight he has given to obviously probative exhibits" approaches "an abdication" of that court's responsibility under the Act. *Cotter*, 642 F.2d at 705 (citation omitted).

Next, the Court addresses Plaintiff's argument that the ALJ failed to explain how he formulated an RFC without certain reaching and postural limitations even though he afforded "great weight" to medical opinion evidence that supported such limitations. As the Court has explained *supra* in Section II of its order, a claimant's RFC reflects the most that the claimant can do despite functional limitations arising from medically determinable impairments. 20 C.F.R. §§ 404.1545(a), 416.945(a). The RFC must reflect limitations arising from both severe and non-severe impairments. *Id.* §§ 404.1545(a)(2)—(3), 416.945(a)(2)—(3). Because the RFC is an administrative finding, the ALJ may formulate an RFC that conflicts with relevant medical opinion evidence. *Id.* §§ 404.1546(c), 416.946(c); *Doty v. Colvin*, No. CIV.A. 13-80-J, 2014

7

WL 29036, at *1 n.1 (W.D. Pa. Jan. 2, 2014).  However, when formulating the RFC, the ALJ must provide "an accurate and logical bridge between the evidence and the result" for reviewing courts to understand how the former supports the latter.  *Gamret v. Colvin*, 994 F. Supp. 2d 695, 698 (W.D. Pa. 2014).

In this matter, the ALJ appears to have partially rejected Dr. Alexandra Smith-Demain's opinion without providing any explanation for this Court to review.  Dr. Smith-Demain evaluated Plaintiff in January 2019.  (R. 1034).  At that time, Dr. Smith-Demain observed that Plaintiff had stable joints in her upper extremities with nearly full strength in her proximal and distal upper extremities.  (R. 1036).  She observed no muscle atrophy.  (*Id.*).  For diagnoses, Dr. Smith-Demain documented "Inflammatory arthritis" and "Status post right arthroscopic shoulder surgery."  (*Id.*).  In an accompanying medical source statement of Plaintiff's ability to do work-related activities, Dr. Smith-Demain indicated that Plaintiff could "Never" reach overhead with her right hand, "Occasionally" reach in all other directions with her right hand, and "Occasionally" push/pull with her right hand.  (R. 1040).  For both Plaintiff's right and left hands, the ALJ indicated that she could handle/finger/feel frequently.  (*Id.*).  For Plaintiff's left hand, the ALJ indicated she could frequently reach overhead, reach in all other directions, and push/pull.  (*Id.*).  For postural activities, Dr. Smith-Demain indicated that Plaintiff could only occasionally stoop, kneel, or crouch; could never crawl or climb ladders/scaffolds; could occasionally climb ramps and stairs; and could frequently balance.  (R. 1041).

The ALJ considered this opinion toward the RFC determination, gave it "great weight," and explained that the weight afforded the opinion was due to its consistency with "the longitudinal medical evidence, including the claimant's reported shoulder pain, back pain and weakness."  (R. 23).  Despite giving this opinion great weight, the ALJ did not include all Dr.

8

Smith-Demain's limitations in the RFC.  For instance, though the ALJ adopted Dr. Smith-Demain's right-overhead-reaching limitation (R. 17), he did not address—and, thus, effectively rejected—Dr. Smith-Demain's other reaching limitations and push/pull limitations.  Similarly, the ALJ acknowledged that Dr. Smith-Demain opined Plaintiff "could occasionally to never do all postural movements," but did not include any postural limitations in the RFC.  (R. 23, 17).  The ALJ was certainly not required to adopt all Dr. Smith-Demain's limitations; however, where the ALJ represented his general reliance on Dr. Smith-Demain's opinion, he ought to have explained why he partially rejected her assessment of Plaintiff's limitations.

The Court has searched the rest of the ALJ's decision for an insight into his reasoning that could bridge this gap between this opinion evidence and the result.  One possible explanation lies in the ALJ's consideration of Plaintiff's right shoulder treatment records.  The ALJ considered records that indicated Plaintiff had "upper extremity pain and paresthesias [sic]" as well as "neck and upper back pain" during and after her 2015 pregnancy.  (R. 18).  He considered that Plaintiff had been diagnosed with degenerative disc disease and cervical stenosis in 2016, and he further considered 2017 notes from Plaintiff's orthopedic surgeon who diagnosed Plaintiff with "primary osteoarthritis of her right shoulder."  (R. 18—19).  He later explained that he nonetheless rejected the alleged severity of Plaintiff's symptoms because, *inter alia*, notes from Greater Pittsburgh Orthopedic Associates indicated Plaintiff maintained a "decent range of motion in her right shoulder."  (R. 22 (citing Ex. 8F)).  He also premised his assessment of Plaintiff's symptom severity on her daily activities such as going to church, dressing herself, preparing simple meals, and doing laundry with her children's assistance.  (R. 23).

Though this discussion of the evidence generally explains why the ALJ did not find Plaintiff was as limited as she alleged, it fails to clarify why the ALJ rejected some of Dr. Smith-

Demain's opinions. The Court could speculate that treatment notes indicating Plaintiff had decent range of motion of her right shoulder outweighed Dr. Smith-Demain's limitation to only occasional reaching in all directions with the right hand. However, so speculating, the Court would be inappropriately supplying an analysis where the ALJ failed to provide one as to why he rejected that relevant evidence. *See Fargnoli*, 247 F.3d at 44 n.7. Accordingly, the Court will order remand.[3]

---

[3] Plaintiff's other arguments for remand are unconvincing. Plaintiff argues that the ALJ failed to evaluate her fibromyalgia and its impact on her functioning in accordance with SSR 12-2P. SSR 12-2P dictates how ALJs should "develop evidence to establish that a person has a medically determinable impairment of fibromyalgia, and how [they] evaluate fibromyalgia . . . under titles II and XVI of the [Act]." 2012 WL 3104869, at *1 (S.S.A. July 25, 2012). While the ALJ did not specifically mention the applicable ruling, the Court finds no error in his evaluation of the fibromyalgia evidence. *See Holiday v. Barnhart*, 76 Fed. Appx. 479, 482 (3d Cir. 2003) ("[W]e are not aware of any duty which requires ALJs to specifically mention relevant Social Security Rulings when rendering a decision[.]"). The ALJ found that fibromyalgia was one of Plaintiff's severe, medically determinable impairments at step two. (R. 13). And, as SSR 12-2P directs, assessed functional limitations arising therefrom using the two-step process for evaluating symptoms and functional limitations. 2012 WL 3104869, at *5; (R. 17—20). The Court is also satisfied with the ALJ's consideration of evidence from Dr. Mary Wasko and Dr. Kimberly Liang. Plaintiff has argued that the two doctors' notes differed and that the ALJ failed to reconcile the conflicting evidence. The ALJ acknowledged that Dr. Wasko found Plaintiff experienced "good relief" for fibromyalgia with medication and that Dr. Liang found Plaintiff's fibromyalgia was "severe and active." (R. 19—20). The ALJ considered this and the other evidence toward Plaintiff's RFC. (R. 24—25). Because the ALJ was not required to use "particular language," nothing more was required. *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004).

Plaintiff also challenges the ALJ's consideration of her mental health treatment records insofar as the ALJ addressed "two years' worth of [her] treatment records with the Staunton Clinic" in "a mere two sentences." (Doc. No. 15, pg. 17). However, while the ALJ's treatment of the Staunton Clinic notes was "brief, [he] was not expected to 'make reference to every relevant treatment note.'" *Whisman v. Kijakazi*, No. CV 20-1783, 2022 WL 2238956, at *1 n.2 (W.D. Pa. June 22, 2022) (citing *Fargnoli*, 247 F.3d at 42). Accordingly, the Court discerns no error necessitating remand in the ALJ's treatment of those records.

Plaintiff relatedly argues that the ALJ failed to address Brian Smithley's findings that she showed cognitive deficits, impulse control issues, and attention and concentration impairment. She also argues that the ALJ overlooked evidence of depression. Though Plaintiff challenges the adequacy of the ALJ's consideration of Mr. Smithley's findings, the Court notes that the ALJ

V.   **Conclusion**

Based on the foregoing, the Court has determined that remand is appropriate for further consideration of Plaintiff's applications for benefits. Therefore, the Court remands this matter to the Commissioner for proceedings consistent with the Order.

<u>s/ Alan N. Bloch</u>
United States District Judge

ecf:   Counsel of Record

---

dedicated three paragraphs to summarizing those findings and clearly reviewed that evidence. (R. 21) . The ALJ specifically noted Mr. Smithley's impression of her depression-related complaints. (*Id.*). Not only that, but the ALJ gave specific reasons why he rejected Mr. Smithley's opinion. (R. 23). The Court finds no measurable error in the ALJ's consideration of this evidence. Though Plaintiff has argued that the ALJ cherry-picked what he wanted from this evidence, she has not explained how that alleged error "made any difference" in the ALJ's RFC determination. *Holloman*, 639 Fed. Appx. at 814 (citation omitted).

The Court likewise rejects Plaintiff's conclusory argument that the ALJ should have addressed Dr. Derek Thomas's reflections on the severity of her "back pain and . . . lumbar kyphosis" and Dr. Liang's treatment notes in his assessment of "whether [she] met or equaled Listing 14.09 for Inflammatory Arthritis." (Doc. No. 15, pg. 20). This argument is meagerly developed. Further, the Court considers the ALJ's decision "as a whole," *Jones*, 364 F.3d at 505, and is therefore satisfied that the ALJ did not overlook Dr. Thomas or Dr. Liang's findings in his evaluation of the evidence for Listing 14.09. (R. 14—15, 18, 19—20).

Finally, the Court is unmoved by Plaintiff's argument that the ALJ erred in extracting appropriate mental limitations from the opinion offered by Dr. Chantal Deines, whose opinion the ALJ found "persuasive" as a general matter. (R. 24). Plaintiff argues that Dr. Deines's opinion warranted more than the "routine, repetitive tasks" with only "occasional judgment" and "decision-making" limitations that the ALJ included in the RFC. (R. 17). She argues that Dr. Deines's opinion that Plaintiff would be limited in carrying out even simple instructions was "qualitatively different" than limitation to only occasional decision making and performing routine, repetitive tasks. (Doc. No. 15, pg. 21). However, Plaintiff cites no authority to support her argument.

11